UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VINOD PUNDEER,<br><br>        Plaintiff,<br>        v.<br><br>PAISLEY RESTAURANT, LLC, JUTHIKA BEDI, ABC CORPORATION 1 THRU 10, and JOHN DOES 1 THRU 10,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vinod Pundeer, by and through his attorneys, Shah Law Group, LLC, hereby asserts the following allegations and claims against Defendants Paisley Restaurant, LLC and Juthika Bedi (collectively, the "Paisley Defendants"):

**PRELIMINARY STATEMENT**

1.      Paisley is a trendy Indian restaurant located in Manhattan's Tribeca section that serves food from the different regions of India. Unfortunately, Paisley and its owner, Bedi, have adopted employment practices that are far better suited for the dustbin of history. This suit seeks to hold Paisley and Bedi liable for human trafficking and other statutory violations under New York law. The Paisley Defendants' horrific conduct includes, among other things, forcing its former employee, Pundeer, to not only work without compensation, but to work for several hours after a tandoor oven exploded and caused severe burns to his hand, arm and face. While Pundeer's skin oozed blood and puss and blistered and peeled, Bedi berated him and demanded that he continue to work on fulfilling a catering order for Citibank, N.A., otherwise he would never receive the back wages he was owed, and would be terminated, thereby resulting in the loss of his work Visa and health benefits. Chastened by Bedi's threats, Pundeer complied and finished the Citibank order, though it's unlikely any Citibank

1

employee or guest would have eaten the food had they known the physical condition of the employee who prepared it.

Bedi's unlawful conduct continued even after the injury, as she continued to use the threat of nonpayment of wages and deportation to keep Pundeer working for Paisley despite his severe burn injuries. Paisley offered no reasonable accommodation to Pundeer for his obvious disability, failing to even initiate the interactive process. Instead, when Pundeer sought to speak with Bedi's husband, Sanjeev, about the nonpayment of wages and his disability caused by the tandoor exploding, Sanjeev threatened him and fired him.

Pundeer now brings this action at law.

## PARTIES

2. Plaintiff Pundeer is an Indian national who currently resides in Hicksville, NY, and was a former employee of Paisley.

3. Defendant Paisley is a restaurant located in the Tribeca neighborhood of New York City, NY.

4. Defendant Bedi is the owner of the Paisley Restaurant and resides in Alpine, NJ.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this lawsuit raises a claim under the Trafficking Victims Protection Act, 28 U.S.C. § 1589, *et seq*.

6. In addition, there is also diversity jurisdiction pursuant to 28 U.S.C. § 1332, as plaintiff is a foreign national present in the United States on an O-1 Visa, while Bedi is a citizen of New Jersey; upon information and belief, Paisley is also a citizen of New Jersey because all of its members reside there.

7. Venue is proper in this district as a substantial part of the events or omissions giving rise to plaintiff's claims occurred here. *See* 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

8. Plaintiff is a 53-year-old male who was born and raised in New Delhi, India, and worked in the culinary arts for several years.

9. From time-to-time starting in 2016 or 2017, plaintiff would visit family in Fremont, CA.

10. In August 2021, during one of these visits, plaintiff spoke to Peter Beck, an acquaintance he had known since 2015 and the head chef at Paisley.

11. Beck told plaintiff that Bedi had opened Paisley and was looking for a sous chef.

12. A sous chef is the second-in-command in a restaurant's kitchen.

13. Beck asked plaintiff to travel to New York City and audition for the role.

14. Plaintiff acquiesced and came to New York City and tried out for the role before Bedi.

15. After impressing Bedi, plaintiff was offered the job and accepted.

16. Paisley, as the employer, submitted paperwork to obtain immigration approval for plaintiff to work for it in the United States.

18. Plaintiff, who had returned to India while his application was pending, was ultimately approved for an O-1B Visa, which is a nonimmigrant, employer-sponsored Visa for culinary professionals with extraordinary ability.

   A. The Paisley Defendants' Failure To Pay Wages And Theft From Plaintiff.

19. Plaintiff began working for Paisley on or about February 3, 2023.

20. Plaintiff was to be paid the sum of $1500 per week.

21. However, Paisley failed to pay this sum to plaintiff when due.

22. Specifically, between February 3, 2023, and April 9, 2023, when plaintiff was wrongfully terminated, he received two or three checks.

23. In addition, Bedi opened a joint bank account with plaintiff where the payroll checks were deposited.

24. From time to time, Bedi would withdraw funds from the account for her own personal use.

25. When plaintiff inquired from Bedi about the failure to pay his wages, Bedi would yell at him and tell him that he didn't understand how to run a business, that she had paid immigration fees for plaintiff to be able to work in the United States, and that she would pay plaintiff as soon as Paisley was financially able.

26. Ultimately, plaintiff was never paid his full wages.

27. In addition, Bedi took full advantage of plaintiff's lack of sophistication.

27. In or about February or March 2023, plaintiff tried to arrange for $15,000 in funds to be sent to his daughter for her college tuition.

28. The money was transferred by plaintiff's mother to a friend of Bedi's in California and subsequently turned over to Bedi.

29. Instead of transferring the full amount, Bedi kept approximately $5000 to $10,000 of the monies for herself.

B. **The Paisley Defendants Compel Plaintiff To Work And Prepare Food After He Suffered Severe Burns On The Job.**

30. On March 7, 2023, plaintiff was at Paisley working on preparing a large catering order for Citibank.

31. Plaintiff was instructed to operate the tandoor oven, as the employee normally responsible for its operation was unavailable.

32. A tandoor oven is a vertical, clay, high-heat cooking vessel that uses gas, charcoal or wood to create a smoky, charred, and moist result for meats and naan.

33. A tandoor oven gets as hot as 900 degrees, whereas a regular oven usually maxes out at 500 degrees.

34. At approximately noon, while trying to operate the tandoor oven, a "blast" occurred which resulted in plaintiff's left hand, arm and face becoming scorched.

35. Plaintiff suffered severe burns.

36. The pain was excruciating and plaintiff requested medical attention.

37. The Paisley Defendants declined to provide plaintiff medical attention.

38. Instead, Bedi told plaintiff that she could not let him leave work because the Citibank catering order could not be filled without him.

39. Plaintiff pleaded with Bedi.

40. In response, Bedi threatened plaintiff and said she would never pay him his overdue wages and would terminate his employment—which would result in his deportation and the loss of health benefits—if he left the job without completing the Citibank order.

41. Facing severe financial and legal harm, plaintiff acquiesced and continued working.

42. Plaintiff worked for approximately 6 more hours, preparing food for Citibank with raw, untreated burns that oozed, bled and blistered.

43. That evening, Bedi went to plaintiff's home and took him to Christ Hospital.

44. There, Bedi communicated with hospital staff and told them that the injury occurred at home.

45. This was an obvious lie, as other Paisley employees had witnessed the incident.

46. After March 7th, Bedi insisted that plaintiff return to work, once again dangling his unpaid wages and immigration status as a threat.

47. In fact, in the days after March 7th, Bedi would drive plaintiff to work and constantly remind him that, if he didn't work, his daughter would not be able to pay her tuition fees and would be kicked out of college, and he would be terminated and must return to India.

47. Fearing the consequences, plaintiff acquiesced and continued to work, despite the Paisley Defendants failing to pay him or even offer him a reasonable accommodation for the disability the workplace caused.

48. When the pain would become unbearable at work, Bedi would compel plaintiff to take painkillers—sometimes up to 8 per day—so that he would keep working.

49. These pain medications weren't even prescribed for plaintiff and evidently came from Bedi's personal stash.

50. The Paisley Defendants failed to pay plaintiff his wages anyway.

51. On or about April 9, 2023, plaintiff called Bedi's husband, Sanjeev Bedi, to complain about the nonpayment of his wages, the pain he was suffering on account of his burns, and the fact that, despite that pain, Bedi was still forcing him to work.

52. Sanjeev doubled down with additional threats, telling plaintiff he was fired, should stop calling him or Juthika about unpaid wages, and threatened to break his arms and legs.

53. Plaintiff became distraught and suffered severe emotional distress.

**COUNT I: VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1589,  § 1590, 1594 (AGAINST THE PAISLEY DEFENDANTS)**

54. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

55. The TVPA makes it unlawful to provide or obtain the labor or services of a person by "means of serious harm or threats of serious harm to that person or another person"; "means of the abuse or threatened abuse of law or legal process"; or "means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

56. In addition, the TVPA makes a person liable for attempting to procure labor through prohibited means in the same manner and to the same extent as a person who actually procures such forced labor or services.

57. The Paisley Defendants violated the TVPA by effectuating a sinister scheme, plan and pattern to force plaintiff to work for the restaurant.

58. The Paisley Defendants failed to pay plaintiff wages and then deducted monies from plaintiff's bank account (which Bedi set up joint custody of), thereby creating financial pressure on plaintiff, a person of meager means who had immigrated to the United States on an O-1B Visa and was trying to support his daughter with her college tuition.

59. As Bedi routinely reminded plaintiff, if he didn't work—despite not being paid—he would never receive his wages and would be terminated, thereby resulting in revocation of his O-1B Visa, and subsequent deportation, as well as financial harm to his daughter.

60. The Paisley Defendants then used these financial and legal pressures to force, or at least attempt to force, plaintiff to continue working for them.

61. This was especially true after plaintiff suffered severe burns on March 7, 2023, with the Paisley Defendants compelling plaintiff to continue cooking food for their client, Citibank, while his skin oozed, bled, and peeled from severe burns.

62. Furthermore, as part of the overall scheme, plan and pattern, Bedi lied to hospital staff about where plaintiff suffered the injuries, thereby avoiding Paisley's obligation to provide workers compensation benefits.

63. Had these benefits been paid, it would have resulted in plaintiff receiving substantial monies, thereby alleviating the financial strain the Paisley Defendants had placed him under through their failure to pay him.

64. The Paisley Defendants' scheme, plan and pattern to force plaintiff to work for them continued throughout plaintiff's employment, with Bedi transporting plaintiff to work after March 7th and telling him he had to work or otherwise he would lose his job and suffer financial and legal consequences.

65. Part of this scheme involved Bedi telling plaintiff to take unprescribed painkillers in quantities sufficient to create dependency so that he would keep working.

66. Plaintiff suffered severe financial and emotional distress, including pain and suffering as a result of the Paisley Defendants' unlawful actions and violations of the TVPA.

**WHEREFORE**, plaintiff prays for judgment in his favor on this Count, including an award of economic damages, compensatory damages (including but not limited to for pain and suffering), and punitive damages, as well as reasonable attorney fees and costs, as well as all other relief that this Court deems just and equitable.

**COUNT II: VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXEC. LAW § 296 AND NEW YORK CITY HUMAN RIGHTS LAW, N.Y. COMP. CODES R. & REGS. § 8-502—DISCRIMINATION BASED ON IMMIGRATION STATUS (against Paisley)**

65. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

66. Based on his immigration status, and his status as a disabled employee after he suffered burns at work, plaintiff is a member of a protected class under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").

67. Plaintiff was qualified to work as a sous chef and was, in fact, working in that position.

68. The Paisley Defendants exploited plaintiff's immigration status, and discriminated against him based on it.

69. The Paisley Defendants did this by first failing to pay plaintiff his earned wages, which was part and parcel of their scheme to try and create financial pressure upon him, an immigrant with meager resources whose ability to reside in the country was tied to his employment.

70. Furthermore, and as part of their discriminatory plan, the Paisley Defendants refused to provide plaintiff workers compensation benefits after he suffered a workplace injury on March 7, 2023, knowing full well that such benefits would allow plaintiff to alleviate the financial pressure they had placed upon him and enjoy protected status as an injured employee, thereby making him less dependent on the need to continue to work for them while injured.

71. The Paisley Defendants were fully aware of how plaintiff's immigration status intersected with his employment, as Bedi continually reminded plaintiff about

his need to continue to work if he wanted to receive back and future wages, stay in the country, and support his daughter.

72. Plaintiff was treated differently than other Paisley employees who were not on O-1B Visas, as they received timely payment for their services, did not have to share a bank account with Bedi, did not have monies unlawfully deducted from their bank accounts by Bedi, and received workers compensation benefits when they were injured.

73. Plaintiff suffered severe financial and emotional distress, including pain and suffering, as a result of the Paisley Defendants' unlawful actions and violations of the NYSHRL and NYCHRL.

**WHEREFORE**, plaintiff prays for judgment in his favor on this Count, including an award of economic damages, compensatory damages (including but not limited to for pain and suffering), and punitive damages, as well as reasonable attorney fees and costs, as well as all other relief that this Court deems just and equitable.

**COUNT III: VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXEC. LAW § 296 AND NEW YORK CITY HUMAN RIGHTS LAW, N.Y. COMP. CODES R. & REGS. § 8-502—DISCRIMINATION AND RETALIATION BASED ON DISABILITY (against Paisley)**

74. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

75. Plaintiff became disabled on March 7, 2023, on account of the severe burns he suffered.

76. As such, plaintiff's disability rendered him a member of a protected class under the NYSHRL and NYCHRL.

77. The Paisley Defendants failed to reasonably accommodate plaintiff's disability.

78. Rather, instead of initiating the interactive process to try and find some way to accommodate plaintiff's disability, the Paisley Defendants compelled plaintiff to work as if his disability didn't exist, giving him unprescribed pain medications in unsafe quantities, and wielding plaintiff's financial situation and immigration status as a cudgel to keep him working.

79. Moreover, when plaintiff complained about his working conditions—which included no accommodations for the severe burns he suffered—Paisley retaliated by firing him and threatening him with physical harm if he ever contacted Bedi again.

80. Plaintiff suffered severe financial and emotional distress, including pain and suffering, as a result of the Paisley Defendants' unlawful actions and violations of the NYSHRL and NYCHRL.

**WHEREFORE**, plaintiff prays for judgment in his favor on this Count, including an award of economic damages, compensatory damages (including but not limited to for pain and suffering), and punitive damages, as well as reasonable attorney fees and costs, as well as all other relief that this Court deems just and equitable.

**COUNT IV: UNPAID WAGES UNDER N.Y. LAB. LAW §§ 191, 195, 198 (AGAINST THE PAISLEY DEFENDANTS)**

81. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

82. Plaintiff worked for Paisley between February 3, 2023 and April 9, 2023.

83. During that time, plaintiff would work in excess of 10 hours most days, starting at approximately 10 a.m. and continuing to work until 10 p.m. (on weekdays) or 10:30 p.m. (weekends).

84. On certain occasions, plaintiff would be permitted to take a break of approximately 1.5 hours between 3:30 and 5 p.m., but was often compelled to work during that window to prepare for the dinner crowd.

85. Paisley failed to pay plaintiff for overtime and, for most of his employment, failed to pay him at all.

86. Even on occasions when Paisley paid plaintiff, it shortchanged his wages by paying him less than the contract provided.

87. For example, in late February 2023, Bedi took plaintiff to a Chase Bank branch to open a joint bank account and deposited a check for approximately $900 at the time.

88. This was far less than what plaintiff was owed for that week.

89. In addition, Paisley failed to comply with the Wage Theft Prevention Act (WTPA), N.Y. LAB. LAW § 195, an amendment to the New York Labor Law (NYLL), N.Y. LAB. LAW § 190, *et seq.*, by providing a wage statement to plaintiff which identified, among other things, the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; and deductions.

90. Paisley and Bedi were employers under the NYLL.

91. Bedi made hiring decisions for Paisley and had complete control over its operations and finances, including its payroll.

92. Indeed, when plaintiff inquired about his unpaid wages, Bedi would respond by stating he would be paid when Paisley's finances improved.

93. After plaintiff's injury, Bedi would tell plaintiff that he needed to continue working or otherwise he would not be paid and would be fired, thereby leading to the loss of his Visa.

94. Thus, Bedi qualifies as an employer under the NYLL.

95. The Paisley Defendants' failure to pay wages, including overtime, and comply with the WTPA's wage statement requirement, injured plaintiff.

**WHEREFORE**, plaintiff prays for judgment in his favor on this Count, including an award of economic damages, liquidated damages, statutory damages, compensatory damages (including but not limited to for pain and suffering), and punitive damages, as well as reasonable attorney fees and costs, as well as all other relief that this Court deems just and equitable.

### COUNT V: CONVERSION (AGAINST BEDI)

96. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

97. Bedi flat out stole money belonging to plaintiff.

98. Bedi did this in two ways.

99. First, Bedi became a joint account holder with plaintiff at Chase Bank.

100. Shortly after depositing plaintiff's first paycheck into that joint account, Bedi began to withdraw funds from it.

101. Second, Bedi received $15,000 that belonged to plaintiff and which plaintiff intended to send to his daughter for tuition.

102. Bedi failed to transfer all of the funds and, instead, kept between $5000 and $10,000 for herself.

103. Plaintiff has subsequently made demand for the return of the property that Bedi wrongfully absconded with.

103. Bedi's exercise of control and dominion over personal property belonging to plaintiff constitutes conversion.

104. Plaintiff has been damaged as a result.

WHEREFORE, plaintiff prays for judgment in his favor on this Count, including an award of economic damages, compensatory damages, and punitive damages, as well as all other relief that this Court deems just and equitable.

**COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST PAISLEY DEFENDANTS)**

105. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

106. Plaintiff was subjected to extreme and outrageous conduct by the Paisley Defendants, including but not limited to Bedi forcing plaintiff to work for approximately six hours after he suffered severe burns from the tandoor oven.

107. Bedi did this by telling plaintiff he would not receive his wrongfully withheld wages if he failed to continue working on fulfilling the Citibank catering order.

108. Bedi continued her extreme and outrageous conduct by then lying to hospital staff about plaintiff's injuries, claiming he was injured at home instead of at work.

109. This allowed Bedi to deny plaintiff any workers compensation benefits, thereby keeping him dependent on the hope that Paisley would someday pay him for his work.

110. Moreover, instead of providing plaintiff a reasonable accommodation at work for his injuries, Bedi gave plaintiff unprescribed pain killers to keep him working, all while continuing to remind plaintiff from time to time that he needed to work to receive his wages (both back and future pay) and maintain his Visa.

111. Moreover, when plaintiff complained to Sanjeev, Juthika's spouse and co-owner of Paisley, about his wages and how forcing him to work while disabled

caused him severe hardship, Sanjeev threatened to break his arms and legs and fired him.

112. The Paisley Defendants' conduct was intended to cause, or constituted total disregard of a substantial probability that it would cause, severe emotional distress to plaintiff.

113. Plaintiff suffered severe emotional distress as a result of the Paisley Defendants' actions.

**WHEREFORE**, plaintiff prays for judgment in his favor on this Count, including an award of compensatory damages (including but not limited to for pain and suffering), and punitive damages, as well as all other relief that this Court deems just and equitable.

## COUNT VII: BREACH OF CONTRACT (AGAINST PAISLEY)

114. Plaintiff repeats and incorporates each of the foregoing paragraphs as if they were fully set forth herein.

115. Plaintiff executed an employment contract that required Paisley to pay him the sum of $1500 per week.

116. Paisley breached this contract by failing to pay plaintiff his wages.

117. Plaintiff suffered damages as a result of Paisley's failure to honor the contract.

**WHEREFORE**, plaintiff prays for judgment in his favor on this Count, including an award of economic damages, as well as reasonable attorney fees and costs, as well as all other relief that this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

                                                       **SHAH LAW GROUP, LLC**
                                                       *Attorneys for Plaintiff Vinod Pundeer*

Dated: January 28, 2026               By: */s/ Roshan D. Shah*
                                                       ROSHAN D. SHAH, ESQ.
                                                         305 Broadway, 7th Floor
                                                        New York, NY 10007
                                                         Tel: 732-398-6545
                                                         Facsimile: 732-576-0027
                                                         E-mail: rshah@shahlg.com